IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 2:20-cr-11 |
| | ) | |
| v. | ) | |
| | ) | |
| TAMARA LATISHA HOWELL, | ) | |
| | ) | |
| Defendant. | ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, through its attorneys, G. Zachary Terwilliger, United States Attorney, and Andrew Bosse and John F. Butler, Assistant United States Attorneys, hereby submits its position with respect to the defendant's sentencing factors.  In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable guidelines range to be a term of 292-365 months of imprisonment, based on a Total Offense Level of 38 and a Criminal History Category of III.  In accordance with Section 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and consulted with the Probation Office and defense counsel.  Defendant's outstanding objections are addressed below.

For the reasons outlined below, the United States respectfully submits that a downward variance to a sentence of 100 months, as allowed by the "safety valve" provision of 18 U.S.C. § 3553(f), would be sufficient but not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a).

I.    **Background**

On February 5, 2020, a grand jury sitting in Norfolk returned an indictment charging the defendant, her brother Xavier Howell, co-defendants Kevin Howard and Laquisha McFrazier, and an additional co-defendant with conspiracy to manufacture, distribute, and possess with intent to manufacture and distribute 500 grams or more of methamphetamine and 50 grams or more of "ice," in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (Count One).  The defendant also was charged with possession with intent to distribute (A)-weight amounts of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count Two).  ECF Nos. 15, 70.

The government agreed to allow the defendant to remain on bond pending trial.  ECF Nos. 24, 29.  On May 20, 2020, the defendant pleaded guilty to Count One of the indictment.  ECF Nos. 46-53.  The Magistrate Judge who accepted the plea ordered her detained pending sentencing, but at the request of the defendant stayed the order pending appeal.  ECF No. 54.  At a hearing on the bond appeal, the government presented evidence that the defendant violated the terms of her bond by speaking with her brother and co-defendant on a video chat recorded by the jail at which he was incarcerated, during which she attempted to conceal her identity and told her brother about the questions the FBI asked her concerning a co-conspirator during a debrief that was conducted under her plea agreement.  ECF No. 59.  The Court ordered her detained pending sentencing.  ECF No. 62.

The Court continued the sentencing hearing twice on defendant's unopposed motions.  ECF Nos. 88, 89, 91, 94.  The hearing is now scheduled for Monday, January 4, 2021.

II.    **Defense Objections**

The defendant has three objections to the PSR: (1) that she should not be assigned a two-point enhancement for obstruction of justice under U.S.S.G. § 3C1.1; (2) that she should receive a three-level reduction for acceptance of responsibility; and (3) that she should receive an offense level reduction under the sentencing guidelines because she qualifies for the statutory "safety valve" under 18 U.S.C. § 3553(f).

The government notes at the outset that, because it is seeking a sentence reflecting a significant downward variance and anticipates that the defendant is requesting the same, none of these objections will likely affect the final result here should the Court agree that a downward variance is appropriate.

The obstruction enhancement was properly assigned.  Under U.S.S.G. § 3C1.1, if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction," and the obstruction was related to "the offense of conviction and any relevant conduct" or a "closely related offense," the offense level should be increased by two points.  The government bears the burden of proving by a preponderance of the evidence that the enhancement should be applied.  *See United States v. Steffen*, 741 F.3d 411, 414 (4th Cir. 2013).

Here, while the defendant was on bond, she violated the conditions of her release by speaking to her brother—Xavier Howell, the lead Virginia-based conspirator charged in the case—on a recorded video call from his jail.  As the Court learned during the prior hearing on her bond appeal, the defendant attempted to disguise her identity on the calls by wearing oversized sunglasses and a hooded sweatshirt, and by referring to herself in the third person. Had the defendant slipped up by having a merely social chat with her brother, that would have

3

been a violation of her bond condition but no more.  Instead, the defendant—who had been interviewed by the FBI and the U.S. Attorney's Office pursuant to her plea agreement, and who was asked during that interview numerous questions about the charged conspiracy and in particular about one as-yet uncharged co-conspirator—relayed to her brother information about whom the FBI was asking her about, using coded language.  That was intentional interference with the ongoing investigation into the same conspiracy she and her brother were charged with.  Informing the head of a criminal conspiracy about another co-conspirator investigators were looking into—information the defendant gained by purporting to cooperate pursuant to a plea agreement—is textbook "imped[ing] … the administration of justice with respect to the investigation [and] prosecution … of the instant offense of conviction," *i.e.*, the conspiracy to which the defendant pleaded guilty.  There is no requirement that the obstructive conduct occur before or after conviction; § 3C1.1 specifically anticipates conduct that affects an ongoing investigation or sentencing, which by definition occurs after conviction.  Nor is there any requirement that the obstructive action be one of the exemplars given in Note 4 to § 3C1.1—a "non-exhaustive" list of some of the more common types of obstruction.  The conduct here was nefarious and also highly unusual; it is not surprising that the sentencing commission did not include "feeding law enforcement sensitive information learned during a purported cooperation debrief back to the head of a major criminal conspiracy" in its list of most common obstructive conduct.

As to the second objection, "[c]onduct resulting in an enhancement under § 3C1.1 … ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1 cmt. n.4.  The defendant bears the burden of showing that she "has clearly recognized and affirmatively accepted personal responsibility for [her] criminal conduct," and

this "does not flow automatically from a guilty plea." *United States v. May*, 359 F.3d 683, 693 (4th Cir. 2004).  The scenario here is more complicated than is typical.  After the obstructive conduct described above, the defendant retained new counsel, and the government gave the defendant the opportunity to attempt to re-start her compliance with the plea agreement.  She did so, and thus far has lived up to her agreement successfully.  Thus, while the government strongly opposes the argument that the obstruction enhancement should not apply, it would not object to a reduction for acceptance of responsibility under these unusual circumstances, if the Court is convinced that the defendant's acceptance of personal responsibility is genuine.  Should the Court grant a two-level reduction for acceptance under § 3E1.1(a), the government would move for a third point under § 3E1.1(b).

The defendant's third objection is that she did not receive an additional two-point reduction to her offense level because she qualifies for the statutory "safety valve" provision under § 3553(f).  Congress, in the First Step Act, expanded the safety valve by statute to allow more defendants without serious prior offenses to qualify for a sentence below the mandatory minimum in certain cases, including drug cases like this one.  *See* 18 U.S.C. § 3553(f).  The government agrees that the defendant qualifies under that *statutory* safety valve.  The sentencing guidelines "safety valve," however, contains a more stringent list of conditions—relevant here, it does not apply to defendants with more than one criminal history category point.  *See* U.S.S.G. § 5C1.2(a)(1).  The two-point offense level reduction under § 2D1.1(b)(18) is only available to those who qualify under § 5C1.2(a)(1), which the defendant does not, and so the objection should be overruled.  As the probation officer noted, however, PSR ¶ 88, the Court could impose a downward variance that would mirror the effect of a two-point offense level reduction under

5

the guidelines safety valve.  Here, the parties are both requesting a variant sentence, and so this

objection is likely moot as a practical matter.

## III.   Position on Sentencing and Argument

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step

process.  First, the court must correctly determine, after making appropriate findings of fact, the

applicable guideline range."  *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006).

"Next, the court must 'determine whether a sentence within that range serves the factors set forth

in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'"

*Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)).  In making this

determination,

> a sentencing court must consider "the nature and circumstances of
> the offense and the history and characteristics of the defendant"
> and the need "to reflect the seriousness of the offense," provide
> "just punishment," "afford adequate deterrence," "protect the
> public," and "avoid unwarranted sentence disparities among
> defendants with similar records who have been found guilty of
> similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

### A.   Nature and Circumstances of the Offense

The defendant took part in a massive interstate methamphetamine trafficking operation,

in which pounds and pounds of nearly pure "ice" procured by members of the Grape Street Crips

street gang in Compton, California, were shipped with the assistance of a corrupt U.S. Postal

employee to the Hampton Roads area for further distribution.  The defendant's brother, Xavier

Howell, led the conspiracy, and the defendant played an active role in it in two ways: first, she

picked up packages containing tens of thousands of dollars' worth of drugs that had been shipped

from California to an address on Ego Drive in Virginia Beach, and then delivered those drugs to

her brother and other co-conspirators; second, she helped launder thousands of dollars in drug proceeds through electronic fund transfers back to California.  The defendant is the lowest-ranking member of the organization charged in this case, but she was more than a mere courier or "mule."  She deceived other family members, when necessary, to disguise the nature of the meth trafficking operation.  PSR ¶ 9.  She also materially benefited from the conspiracy—as she told her brother, she made as much working for him in a day as she did during a week of honest work.  PSR ¶ 9.  She did all of these things while under state court supervision from a number of past offenses, albeit relatively minor ones.  PSR ¶ 46.  In September 2019, she and her brother were arrested in possession of more than three and a half *pounds* of nearly pure methamphetamine, with her baby in the car.  While the defendant is less culpable than her brother and others charged in this case, her conduct is serious, and the overall scheme in which she played a part was immensely harmful.  The conspiracy involved a massive amount of controlled substances, leading to the second-highest available base offense level for a drug crime.  U.S.S.G. § 2D1.1(c)(1).  The defendant then engaged, after pleading guilty, in the obstructive conduct described above.

To the defendant's credit, she has since turned her conduct around and begun complying with her plea agreement.  There is also no record that she used violence or firearms.  Taking into consideration the influence of her brother, who ran the scheme; the defendant's role in moving bulk packages of meth but not distributing to end users; the lack of violence; and the defendant's lack of a prior serious drug record, the government agrees that a downward variance from the significant guidelines range is appropriate here.

B.      History and Characteristics of the Defendant

The defendant, 29, was raised in Queens, New York, then moved to Virginia when she was 15.  She reportedly graduated high school, received an associate's degree, and has worked at a number of jobs, mostly for short periods of time before leaving or being fired.  PSR ¶¶ 69-81. She is in good physical health, despite smoking a significant amount of marijuana.  PSR ¶¶ 62-63, 66.  The defendant has reported gravely serious allegations stretching back into her childhood, which will require additional investigative work.  PSR ¶ 58.  She has two children who are currently being taken care of by her sister and mother, both of whom are gainfully employed.  PSR ¶¶ 55-56, 60.

Since she was 18 years old, the defendant has amassed a raft of convictions, most but not all of them relatively minor.  PSR ¶¶ 34-44.  These include convictions for computer fraud, shoplifting, forging license plates, and a host of driving violations.  Her repeated illegal conduct and drug use, while it did not include convictions for drug offenses or violence, paints the picture of someone who does what she wants to do, and takes what she can, regardless of its legality. From the time she was 18, the only years she was not arrested were 2012 and 2015.

The defendant chose to join a massive methamphetamine conspiracy while under court supervision for a number of other offenses.  Her actions strongly suggest the need for a significant sentence of incarceration that will provide just punishment, take into account the seriousness and scale of the criminal enterprise she knowingly joined, and deter her from future illegal activity.  A significant sentence will also promote respect for the law, which thus far appears to have been entirely absent in the defendant's life.  Despite all of that, the government's position is that a sentence within the massively high guidelines range applicable here would be

greater than necessary.  A downward variance to 100 months would provide a better fit for the sentencing factors listed in § 3553(a).

## IV.     <u>Conclusion</u>

Taking all the § 3553(a) factors into account, the government respectfully submits that a sentence of 100 months is appropriate and not greater than necessary.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:      _____/s/_____
Andrew Bosse
John F. Butler
Assistant United States Attorneys
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
andrew.bosse@usdoj.gov
john.f.butler@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of December, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

I HEREBY CERTIFY that on this 21st day of December, 2020, I sent by electronic mail a true and correct copy of the foregoing to the following:

> Shannon E. Gerard
> U.S. Probation Officer
> 600 Granby Street, Suite 200
> Norfolk, Virginia 23510
>
> _____/s/_____
> Andrew Bosse
> Assistant United States Attorney
> United States Attorney's Office
> 101 West Main Street, Suite 8000
> Norfolk, Virginia 23510
> Office Number: 757-441-6331
> Facsimile Number: 757-441-6689
> andrew.bosse@usdoj.gov

10